THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE LOPEZ, et al.                  :   CIVIL ACTION NO. 3:19-CV-00785
                                        :   (JUDGE MARIANI)
            Plaintiffs,                 :
                                        :
            v.                          :
                                        :
MOUNTAIN VIEW CARE AND                  :
REHABILITATION CENTER, LLC,             :
                                        :
            Defendant.                  :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 39)

seeking judgment in its favor on the two counts contained in the Complaint: Plaintiff's Title

VII claim and Pennsylvania Human Relations Act ("PHRA") claim based on National Origin

Discrimination.  (Doc. 1.)   In the Complaint, Plaintiffs Michelle Lopez, Nancy Acosta,

Yanaira Marmol Pena, Yocasta Bello, and Ysmit Mercado allege that their employer,

Defendant Mountain View Care and Rehabilitation Center, LLC, ("Defendant" "Mountain

View") violated Title VII and the PHRA when it implemented a "blanket 'no Spanish' policy

whereby employees could not speak Spanish anywhere on Defendant's premises at any

time." (Doc. 1 ¶ 20; Doc. 40 ¶¶ 1, 2; Doc. 42 ¶¶ 1, 2.)  Plaintiffs specifically aver that the

policy has a disparate impact on Plaintiffs, Defendant's only non-English speaking

employees, and the policy creates a hostile work environment for them. (*Id.* ¶¶ 40, 41.)
They further aver that Defendant's policy has no business necessity. (*Id.* ¶ 42.)

Defendant now asserts that there are no material facts in dispute and that it is
entitled to judgment as a matter of law. (Doc. 41 at 18.) For the reasons that follow, the
Court will deny Defendant's motion.

## II. BACKGROUND

Defendant is a long-term skilled nursing care facility located in Scranton,
Pennsylvania. (Doc. 1 ¶ 7; Doc. 40 ¶ 4; Doc. 42 ¶ 4.) Plaintiffs are or were employed by
Defendant as certified nursing assistants ("CNA's") at Defendant's facility. (*Id.* ¶ 16.) They
are all American citizens of Hispanic national origin who are bilingual in Spanish and
English. (*Id.* ¶ 17; Doc. 40 ¶¶ 12, 13; Doc. 42 ¶¶ 12, 13.)

Plaintiffs specifically allege that that they each attended a training session between
July 16 and July 20, 2018, conducted by Defendant and the training included a new policy
introduced with a power point presentation. (Doc. 1 ¶ 18.) Plaintiffs Acosta and Mercado
attended a training session on July 17, 2021, Plaintiffs Lopez and Pena attended the
training on July 18, 2018, and Plaintiff Bello attended the training of the afternoon of July 19,
2018. (*Id.* ¶¶ 22, 25, 33.) While Defendant contends that the slides presented at the July
17th and July 18th presentations referred to speaking Spanish in front of residents, Plaintiffs
respond that Maria Fitzgerald, Defendant's Director of Education, explained that they could
not speak Spanish in other areas of the facility or even on the outside grounds of the facility.

(Doc. 40 ¶ 22; Doc. 42 ¶ 22.)   The policy has been referred to as both a "no Spanish" policy and a "no language other than English" or "English only" policy.  (*See, e.g.,* Doc. 1 ¶¶ 22, 25, 31, 34, 37.)

Defendant denies that the policy was a "new policy," but Plaintiffs respond that employees had not previously been instructed that they could not speak Spanish in the facility's employee-only areas such as the break room, lunch room, smoking area and parking lot.  (Docs. 40 ¶ 7; Doc. 42 ¶ 7.)  Plaintiffs add that Fitzgerald testified at her deposition that there were no policies about employees speaking Spanish or English at Mountain View before 2018.  (Doc. 42 ¶ 7 (citing Fitzgerald Dep. at 26-27).)

Plaintiffs Lopez and Acosta went to see Defendant's administrator, Michael Hetzel, on the morning of July 19, 2018, expressing that they felt uncomfortable and offended by the policy because it singled them out due to their Hispanic origin.  (Doc. 1 § 29; Doc. 40 ¶ 26; Doc. 42 ¶ 26.)  Plaintiff Lopez described the meeting between Hetzel, Plaintiff Acosta, and herself as follows:

> Nancy [Acosta] asked me to go with her to see Mr. Hetzel and speak to him about the situation because we felt targeted that it was – that the slide only said "Spanish."
>
> And we went to his office. . . . Nancy, she told him her concerns and stuff. And I didn't speak much till we got to the part where he was telling Nancy about . . . his grandfather that if we would have met him, you know, he would have told us about himself because this is America and, you know, we should be speaking English.

And I told Mr. Hetzel, My husband does not speak or understand too much English, so if he calls me and Maria just said we're not supposed to even speak Spanish in the break room, what am I supposed to do?

Mr. Hetzel said, Well -- this was his words and I won't forget it -- If I was eating a sandwich and, you know, I don't speak Spanish and you're speaking Spanish next to me, I can't even eat my sandwich in peace because I don't know if you're speaking about, you know, about me in Spanish. It's offensive to the other coworkers. So he said we shouldn't be speaking Spanish in the break room.

And I said, So what am I supposed to do, go to the parking lot? And that's when he also specifically told me, There's family members that walk through that parking lot. Sometimes they take their family -- you know, the residents outside to sit out in the parking lot. They can't -- you know, you're not supposed to even speak Spanish around them because they're in the parking lot, so you will have to leave the premises to speak to your husband.

(Doc. 40 ¶ 27 (citing Def.'s Ex. 5, Lopez Dep. 21:2-22:10); Doc. 42 ¶ 27.)  Hetzel denies this

and other characterizations of his conversation but assumes for summary judgment

purposes that the facts asserted are true.  (Doc. 40 ¶ 72.)

Although Defendants contend that further training occurred after July 19, 2018, (Doc.

40 ¶ 22), Plaintiffs respond that "at no time after July 2018 were the employees advised that

the policy was not as communicated by Fitzgerald and Hetzel, nor were they given further

training regarding languages that could be spoken at the facility (Doc. 42 ¶ 28).

Each of the Plaintiffs asserts feeling offended, singled out, and discriminated against

by the policy.  (Doc. 1 ¶¶ 23, 26, 35; Doc. 40 ¶ 14.)  Plaintiffs add that they were, in fact,

offended and provide citations to deposition testimony of record in support of the assertion.

(Doc. 42 ¶ 14 (citations omitted).)  Several Plaintiffs also allege that they have been

4

subjected to comments by other employees and supervisors: Lopez experienced comments

on three occasions (Doc. 40 ¶¶ 30-35, 37-38, 40); Marmol Pena described two incidents (*id.*

¶¶ 49-50); Mercado related one incident (*id.* ¶¶ 58-61); Acosta experienced comments on

three occasions (*id.* ¶¶ 74-78); and Bello recollected a single comment (*id.* ¶¶ 85-86).  In

many instances, Plaintiffs disagree with Defendant's characterization of the comments

made to Plaintiffs.  (Doc. 42 ¶¶ 30-35. 37-38. 40, 49-50, 58-61, 74-78.)

## III. STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549

F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party, and a factual dispute

is material only if it might affect the outcome of the suit under governing law." *Kaucher v.

County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986)).  Thus, through summary adjudication, the court may dispose of

those claims that do not present a "genuine dispute as to any material fact."  Fed. R. Civ. P.

56(a).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once such a showing has been made, the non-

moving party must offer specific facts contradicting those averred by the movant to establish

a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. ANALYSIS

As set out above, Plaintiffs allege violations of Title VII and the PHRA based on national origin discrimination, specifically averring that Defendant's "English only" policy has a disparate impact on Plaintiffs and creates a hostile work environment for them. *See supra* pp. 1-2.

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), it is unlawful for "an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment . . . because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). It is also unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which

7

would deprive or tend to deprive any individual of employment opportunities or otherwise

adversely affect his status as an employee, because of such individual's race, color,

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

> The Supreme Court has observed that Title VII "is not limited to 'economic' or 'tangible' discrimination," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and that it also bars "a discriminatorily hostile or abusive [work] environment," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

*In re Trib. Media Co.*, 902 F.3d 384, 399 (3d Cir. 2018).

Like Title VII, the PHRA prohibits discrimination by an employer against an individual

on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. §

2000e–2(a); 43 P.S. § 955(a). In applying the PHRA, the Act is construed consistently with

interpretations of Title VII. *Gomez v. Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083–

1084 (3d Cir.1995).

## A. *Disparate Impact*

Defendant asserts that it is entitled to summary judgment on Plaintiffs'

disparate impact claim because Plaintiffs cannot make out the necessary prima facie

case and Defendant's policy is justified as a business necessity. (Doc. 41 at 11-18.)

The Court disagrees.

"Title VII prohibits both intentional discrimination (known as "disparate treatment") as

well as, in some cases, practices that are not intended to discriminate but in fact have a

disproportionately adverse effect on minorities (known as "disparate impact")." *Ricci v.*

8

*DeStefano*, 557 U.S. 557, 577 (2009); *see also Griggs v. Duke Power Co.,* 401 U.S. 424

(1971).  The Court has stated that disparate impact claims involve employment practices

"that are facially neutral in their treatment of different groups but that in fact fall more harshly

on one group and cannot be justified on business necessity." *International Brotherhood of*

*Teamsters v. United States,* 431 U.S. 324, 335–36 n.15 (1977).  A plaintiff proceeding under

this theory need not offer proof of discriminatory motive to make out a prima facie case. *Id.*

Title VII's disparate-impact provision provides:

> An unlawful employment practice based on disparate impact is
> established ... only if ... a complaining party demonstrates that a
> respondent uses a particular employment practice that causes a
> disparate impact on the basis of race, color, religion, sex, or
> national origin and the respondent fails to demonstrate that the
> challenged practice is job related for the position in question and
> consistent with business necessity[.]

42 U.S.C. § 2000e–2(k)(1)(A)(i).  "By enacting § 2000e–2(k)(1)(A)(i), Congress allowed

claims to be brought against an employer who uses a practice that causes disparate impact,

whatever the employer's motives and whether or not he has employed the same practice in

the past." *Lewis v. City of Chicago, Ill.,* 560 U.S. 205, 217 (2010).  In *Texas Dep't of Hous.*

*& Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), the Supreme

Court advised that "[c]ourts must . . . examine with care whether a plaintiff has made out a

prima facie case of disparate impact . . . .  A plaintiff who fails to allege facts at the pleading

stage or produce statistical evidence demonstrating a causal connection cannot make out a

prima facie case of disparate impact." *Id.* at 543.  *Ricci* explains that "a prima facie case of

disparate impact liability [is] essentially a threshold showing of a statistical disparity . . . and

nothing more."  557 U.S. at 587 (citing *Connecticut v. Teal*, 457 U.S. 440 (1982)).

In considering disparate impact claims in the context of hiring, the Court of Appeals

for the Third Circuit has identified a three-step process upon which the litigation proceeds.

> First, a plaintiff must establish a *prima facie* case by "demonstrat[ing] that
> application of a facially neutral standard has caused a 'significantly
> discriminatory hiring pattern.'" [*Newark Branch, N.A.A.C.P. v. City of Bayonne,
> N.J.,* 134 F.3d 113, 121 (3d Cir. 1998)] (quoting *Newark Branch, NAACP v.
> Town of Harrison, N.J.,* 940 F.2d 792, 798 (3d Cir.1991)). This *prima
> facie* showing requires the plaintiff to prove a significant statistical disparity and
> to "demonstrate that the disparity [he] complain[s] of is the result of one or more
> of the employment practices that [he is] attacking." *Id.* (quoting *Wards Cove
> Packing Co., Inc. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d
> 733 (1989)).

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476-77 (3d Cir. 2011).

Next, "[t]he employer may defend against a *prima facie* showing of disparate impact

only by demonstrating that the challenged practice is 'job related for the position in question

and consistent with business necessity.'" *Id.* at 477 (quoting 42 U.S.C. § 2000e–

2(k)(1)(A)(i)).  At this step, the employer bears the burden of production and persuasion. *Id.*

At the third step, "a plaintiff can overcome an employer's business-necessity defense

by showing that alternative practices would have less discriminatory effects while ensuring

that candidates are duly qualified. *See* 42 U.S.C. § 2000e–2(k)(1)(A)(ii), (C).  Proving a less

discriminatory, viable alternative requires supporting evidence." *Id.*[1]

Defendant argues that Plaintiffs cannot succeed on their disparate impact claim

"because no statistical evidence exists.  To be clear, Plaintiffs cannot meet this crucial

element because Defendant has not disciplined or taken any adverse employment action

against Plaintiffs, or any employee under what Plaintiffs characterize as Defendant's

English-only policy."  (Doc. 41 at 12.)  Relying on the *Texas Dep't of Housing and*

*Community Affairs* guidance set out above, Defendant maintains that

> Plaintiffs cannot prove a significant statistical disparity or demonstrate that
> disparity because no actions were taken against Plaintiffs or any other
> employees. Therefore, Plaintiffs' claims of disparate impact fail as a matter of
> law, as they have not yielded any statistical evidence proving a causal
> connection relating to Defendant's English-only policy.

(Doc. 41 at 13.)

With this statement, Defendant misconstrues the necessary prima facie showing in

that Defendant does not recognize that the adoption of the policy was an action taken and

the statistical support for the disparate impact of the policy is readily apparent in the

circumstances presented.  Assuming that the English-only policy is facially neutral and

assuming, for purposes of summary judgment, that the English-only policy applied to

---

[1] Although Third Circuit disparate impact caselaw discussed in the text addresses hiring practices and employment opportunities, nothing in the statutory text or caselaw suggests that working conditions like those at issue here cannot be the subject of a disparate impact claim. *See, e.g., Lewis v. Univ. of Pennsylvania*, Civ. A. No. 16-CV-5874, 2018 WL 583127, at *4-6 (E.D. Pa. Jan. 29, 2018).

Defendant's entire premises (*see* Doc. 40 ¶¶ 71, 72), the action taken was the

implementation of the English-only policy which changed the conditions of employment for

the employees of Hispanic origin for whom English is not their primary language.  Before the

English-only policy, these employees were able to speak Spanish in certain non-patient

areas of the facility and, after the announcement of the policy, they could not.

Because it is not disputed that Plaintiffs were Defendant's only non-English speaking

employees and no languages other than Spanish and English were spoken at the time the

policy was announced (Doc. 1 ¶¶ 34, 40; Doc. 5 Doc. 5 ¶ 40),[2] it follows that 100% of

Defendant's non-English speaking employees were impacted and no other employees were

impacted.  Thus, at this stage of the proceedings, uncontested facts demonstrate a

significant statistical disparity for purposes of Plaintiffs' prima facie showing.[3]  As for the

discriminatory impact of the policy, both commonsense and EEOC regulations indicate that

requiring an employee whose primary language is not English to speak only English at all

---

[2] In its Answer, Defendant "denies that it has an 'English Only' policy as alleged by
Plaintiffs throughout this Complaint and denies that its policy has a disparate impact upon Plaintiffs."  (Doc.
5 ¶ 40.)  However, Defendant does not deny that, at the relevant time, Plaintiffs were Defendant's only non-
English speaking employees and Spanish and English were the only languages spoken by employees.
With the admitted fact that Plaintiffs are all bilingual in Spanish and English (Doc. 40 ¶ 13; Doc. 42 ¶ 13),
the Court interprets Plaintiffs' assertion that they are the only non-English speaking employees to mean
that they are the only employees for whom English is not their primary language or the language normally
used when speaking with other Spanish speaking individuals while on the premises during non-working
time.

[3] Other Courts have found or implied that when all or substantially all of a protected group are
affected by a policy, the statistic involved is 100%.  *See, e.g., Garcia v. Women's Hosp. of Texas*, 97 F.3d
810, 813 (5th Cir. 1996); *see also Hinds v. Baker Hughes, Inc.*, Civ. A. No. MO-06-CV-1343, 2007 WL
10943, at *4 (W.D. Tex. Oct. 18, 2007).

times in the workplace and *all* work premises "is a burdensome term and condition of employment." 29 C.F.R. § 1606.7.

Defendant points to the analysis in *Long v. First Union Corp. of Virginia*, 894 F. Supp. 933 (E. D. Va. 1995), *aff'd* 86 F.3d 1151 (4th Cir. 1996) (table decision), where the District Court determined that there was no adverse employment action because the defendant's English-only policy was never enforced. (Doc. 45 at 8.) Defendant posits the same situation exists here with the implication that this Court should decide likewise. (*Id.*)

The Court rejects Defendant's suggestion. In addition to the fact that the District Court's decision in *Long* is of no precedential value and the Fourth Circuit's affirmance in a table decision addresses only a claim for discriminatory enforcement of an employer's rules, Defendant has presented no undisputed evidence that the English-only policy was never enforced or that the policy was rescinded (*see* Doc. 1 ¶ 37). Thus, rather than undermining the Court's foregoing analysis of Plaintiffs' prima facie case, *Long* at most points to issues of fact to be considered at trial. On the issue of enforcement, it is noteworthy that lack of specific enforcement does not mean that the policy was not in effect and, therefore, affecting the employees for whom Spanish is the primary language.[4]

---

[4] Though Defendant asserts that "Plaintiffs admit that there was no adverse employment action against any of them and that the 'policy' was never enforced" (Doc. 45 at 11), Defendant makes this assertion without citation to the record. The Court addresses the enforcement aspect of the assertion in the text. Regarding Plaintiffs' alleged admission that there was no adverse employment action, the follow-up to Plaintiffs' acknowledgement of Defendant's argument "that because no adverse employment action was taken against Plaintiffs, there can be no disparate impact" shows otherwise. (Doc. 43 at 12.) Rather than agreeing with Defendant on this point, Plaintiffs state that "the United States Supreme Court has

Similarly, Defendant's implication that Plaintiffs' disparate impact claim fails because they are bilingual is unavailing. (*See* Doc. 45 at 9.) Defendant quotes *Garcia v. Gloor*, 618 F.2d 264, 270 (5th Cir. 1980), for the proposition that "there is no disparate impact if the rule is one that the affected employee can readily observe and nonobservance is a matter of individual preference" such that bilingual plaintiffs could readily comply with the speak-English-only rule. (Doc. 45 at 9.) *Gloor* is readily distinguishable in that the defendant's English-only rule did not apply to conversations during breaks or other employee free-time. 618 F.2d at 270. Further, in this case, Plaintiffs' ability to comply with Defendant's English-only policy does not alter the fact that they were disparately impacted by it insofar as it detrimentally altered their conditions of employment as discussed above.

In sum, although Plaintiffs' statement of their disparate impact claim is not a model of clarity, the Court concludes that the facts and circumstances of this case support a finding that, for summary judgment purposes (*see* Doc. 40 ¶¶ 71, 72), a prima facie showing of disparate impact has been made. Therefore, the burden of production and persuasion turns to Defendant to show that "the challenged practice is 'job related for the position in question and consistent with business necessity.'" *N. Hudson Reg'l Fire & Rescue,* 655 F.3d at 477 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)).

―――――――――――――――

'repeatedly made clear that although Title VII mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to economic or tangible discrimination, and that it covers more than terms and conditions in the narrow contractual sense.'" (Doc. 43 at 12 (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115-16 (2002)).) The Court reads this response as a refutation of Defendant's argument that Plaintiffs admitted there was no adverse employment action.

Defendant maintains that its English-only policy is justified as a business necessity. (Doc. 41 at 13.)   In this section of its supporting brief, Defendant points to evidence which may undermine Plaintiffs' assertion that the English-only policy applied premises-wide but acknowledges that it must accept Plaintiffs' characterization of the English-only policy for summary judgment purposes. (*See* Doc. 41 at 13-16; *see also* Doc. 40 ¶¶ 71, 72.)   While the evidence cited may create genuine issues of fact for trial, Defendant can prevail at this stage only by establishing a business necessity for Plaintiffs' characterization of the rule.

In an attempt to satisfy its burden, Defendant points to two district court cases which it asserts support the finding of business necessity here, *Kania v. Archdiocese of Phila.*, 14 F. Supp. 2d 730, 733 (E.D. Pa. 1998), and *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599 (2009).   (Doc. 41 at 21.)   Defendant makes no attempt to analogize this case and those cited, and the Court finds them readily distinguishable. *Kania* was decided primarily on the basis that the English-only rule did not amount to national origin discrimination, an argument that Defendant has not made here. *See* 14 F. Supp. 2d at 736. Further, to the extent that the District Court found that the plaintiff's bilingual status and ability to comply with the rule did not cause a cognizable adverse impact on the terms and conditions of her employment, the Court disagrees for the reasons discussed above. *See supra* pp. 13-14.   Finally, *Kania's* analysis based on assumed applicability of EEOC guidelines "that purport to make English-only rules in the workplace prima facie unlawful, unless the employer can make a showing of business necessity, *see* 29 C.F.R. § 1606.7(b)

(1997)," 14 F. Supp. 2d at 735, concluded that there was "no doubt" that the defendant's

rule had a valid business justification based on evidence of record which showed that the

English-only policy was adopted "to improve interpersonal relations at the Church, and to

prevent Polish-speaking employees from alienating other employees, and perhaps church

members themselves," *id.* at 736.  Here Defendant presents no such justification nor could

Defendant do so in that evidence of record does not indicate a business necessity to

implement a premises-wide English-only policy.

Defendant's reliance on *Pacheco* is without merit in that there was no hospital-wide

English-only policy in place at Defendant New York Presbyterian Hospital's facility, 593 F.

Supp. 2d at 620.  Defendant recognizes this distinction (Doc. 41 at 21) but provides no

discussion of how or why the Court should consider the case in determining the business-

necessity of a premises-wide rule at issue here.

Mountain View next turns to the EEOC regulation governing English-only policies in

the workplace, 29 C.F.R. § 1606.7.  (Doc. 41 at 17.)

> The guidelines distinguish between policies requiring employees to speak
> English at all times or only at certain times. 29 C.F.R. § 1606.7. English-only
> polices applied at all times presumptively violate of Title VII under the
> guidelines. 29 C.F.R. § 1606.7(a). "Policies applied only at certain times are
> permitted, but only where the employer can show the rule is 'justified by
> business necessity.'" 29 C.F.R. § 1606.7(b). "Courts have upheld English-only
> policies enacted to improve employee relations and protect workers from
> feeling they are being talked about by others." W*ilkie v. Geisinger Sys. Servs.*,
> 3:12-CV-580, 2014 WL 4672489, at *9 (M.D. Pa. Sept. 18, 2014) (citing *Tran
> v. Standard Motor Prods., Inc.*, 10 F.Supp.2d 1199, 1210–11 (D. Kan. 1998);
> *Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 237 (N.D.N.Y.1999) ("Several

16

courts have held that an English-only policy designed to reduce intra-office tensions is a legitimate business reason.").

(Doc. 41 at 17.)  Based on this authority, Mountain View asserts that

> in consideration of its business necessity for employees to converse in languages understood by the residents of the facility, [Defendant] informed its employees of the general requirement of speaking English in front of residents and in common areas where residents are often present, unless a specific resident has a care plan which requires communication in another language. 29 C.F.R. § 1606.7(c).

(Doc. 41 at 17-18.)

Critically, Defendant's conclusion regarding its business necessity for the policy pivots from its position that it had a business necessity for the premises-wide English-only policy and points only to a rationale for the limited policy, the existence of which it has acknowledged presents disputed issues of material fact.  (*See* Doc. 1 ¶¶ 71, 72; Doc. 41 at 16.)  Therefore, Defendant has failed to establish a business necessity for the policy at issue in this Summary Judgment motion.[5]  With this determination, the Court concludes that Defendant is not entitled to summary judgment on Plaintiffs' disparate impact claim.

---

[5]  The Court notes that because Defendant has failed to meet its burden at step two of the requisite disparate impact analysis, Plaintiffs would be entitled to summary judgment on this claim but for the fact that the conclusion regarding Plaintiffs' prima facie case hinges on a prima facie finding in Plaintiffs' favor on a disputed material fact, i.e., the contours of the English-only policy being premises-wide rather than the more limited policy asserted by Defendant.  *See supra* pp. 11, 14 (citing Doc. 1 ¶¶ 71, 72).

## 2. Hostile Work Environment

Defendant contends that it is entitled to summary judgment on Plaintiffs' hostile work environment claim because they did not suffer any "severe and pervasive conduct."[6]  (Doc. 41 at 3-11.)  The Court disagrees.

> W]hether an environment is 'hostile' or 'abusive' [is] ... determined only by looking at all the circumstances[,] ... includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)]. To prevail on a hostile work environment claim, a plaintiff must show "1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability. ..." *Castleberry v. STI Grp.,* 863 F.3d 259, 263 (3d Cir. 2017) (alterations omitted) (internal quotation marks omitted) (quoting *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 167 (3d Cir. 2013)).

*In re Trib. Media Co.,* 902 F.3d 384, 399 (3d Cir. 2018).

Because Defendant claims entitlement to summary judgment based only on the second element of the claim, properly stated as "severe or pervasive" rather than "severe and pervasive," *Castleberry,* 863 F.3d at 264, the Court focuses its analysis on this element.

---

[6] Defendant also asserts in his reply brief that Plaintiffs hostile work environment claim fails on the intent element.  (Doc. 45 at 13.)  The Court does not consider this argument because it is raised for the first time in the reply brief.  "A reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein." *Bell v. Lackawanna Cty.,* 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012); *see also United States v. Martin,* 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues.").

In doing so, the Court notes at the outset that Defendant's identify only comments from coworkers as evidence potentially supporting this element (Doc. 41 at 5-11) while Plaintiff also points to the relevance of EEOC guidance on the issue and effects of the policy itself in addition to the remarks from coworkers (Doc. 42 at 13-16).

As set out above, Defendant acknowledges that "English-only polices applied at all times presumptively violate Title VII under the guidelines. 29 C.F.R. § 1606.7(a)." *See supra* p. 16. This subsection of the regulation provides in pertinent part as follows:

> A rule requiring employees to speak only English at all times in the workplace is a burdensome term and condition of employment. The primary language of an individual is often an essential national origin characteristic. Prohibiting employees at all times, in the workplace, from speaking their primary language or the language they speak most comfortably, disadvantages an individual's employment opportunities on the basis of national origin. It may also create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment. Therefore, the Commission will presume that such a rule violates title VII and will closely scrutinize it.

29 C.F.R. § 1606.7(a). Although the regulation does not control the outcome of the "severe or pervasive" inquiry, and the Third Circuit has not addressed the issue, the Court properly considers it as relevant guidance. *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 65 (1986); *Maldonado v. City of Altus*, 433 F.3d 1294 (10th Cir. 2006), *overruled on other grounds by Burlington N. v. Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Of particular significance in this hostile work environment claim is that the regulation provides support for the proposition that a premises-wide English-only policy "may create an

19

atmosphere of inferiority, isolation and intimidation," 29 C.F.R. § 1606.7(a). Here, Plaintiffs

each felt offended, singled out, and discriminated against by the policy and testified to that

effect. (Doc. 1 ¶¶ 23, 26, 35; Doc. 40 ¶ 14; Doc. 42 ¶ 14.) As stated in *Maldonado*, in a

hostile work environment case where a policy is at issue, in addition to evidence of co-

worker taunting,

> [t]here are . . . other considerations with respect to a *policy* that allegedly
> creates a hostile work environment. The policy itself, and not just the effect
> of the policy in evoking hostility by co-workers, may create or contribute to the
> hostility of the work environment. . . . Here, the very fact that the City would
> forbid Hispanics from using their preferred language could reasonably be
> construed as an expression of hostility to Hispanics. At least that could be a
> reasonable inference if there was no apparent legitimate purpose for the
> restrictions. . . . [H]ostility would be a reasonable inference to draw from a
> requirement that an employee calling home during a work break speak only in
> English. The less the apparent justification for mandating English, the more
> reasonable it is to infer hostility toward employees whose ethnic group or
> nationality favors another language. For example, Plaintiffs presented evidence
> that the English-only policy extended beyond its written terms to include lunch
> hours, breaks, and even private telephone conversations, if non-Spanish-
> speaking co-workers were nearby. Absent a legitimate reason for such a
> restriction, the inference of hostility may be reasonable.

433 F.3d at 1304–05.

In its narrowly focused argument, Defendant also fails to consider that the policy

itself has a bearing on the question of "the frequency of the discriminatory conduct." *Harris*,

510 U.S. at 21. Arguably a policy which affects working conditions on a daily basis could be

considered evidence of discriminatory conduct which occurs frequently. Similarly, the daily

impact of the policy arguably shows pervasiveness.

Because Defendant does not address these relevant aspects of the "severe or pervasive" element of Plaintiffs' hostile work environment claim, the Court cannot conclude that Defendant looked at all relevant circumstances. *Harris*, 510 U.S. at 21 (1993); *Trib. Media*, 902 F.3d at 399. Therefore, summary judgment on Plaintiffs' hostile work environment claim is properly denied. With this conclusion, the Court makes no determination on the merits of Plaintiffs' hostile work environment claim, but rather decides only that Defendant has not shown that a rational juror could not find on this record that the impact of the English-only policy on Hispanic workers was "sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment." *Harris,* 510 U.S. at 21 (internal quotation and citation omitted).

## V. CONCLUSION

For the reasons set out above, Defendant's Motion of Summary Judgment (Doc. 39) will be denied. A separate Order follows this Memorandum Opinion.

Robert D. Mariani
United States District Judge