THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE LOPEZ, NANCY ACOSTA YANAIRA MARMOL PENA, YOCASTA BELLO, and YSMIT MERCADO,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNTAIN VIEW CARE AND REHABILITATION CENTER, LLC,<br><br>Defendant. | CIVIL ACTION NO. 3:19-CV-785<br>(JUDGE MARIANI) |

FILED
SCRANTON
JUN 1 6 2022
PER _____ /s/
DEPUTY CLERK

## MEMORANDUM OPINION
### I. INTRODUCTION

Presently before the Court is Defendant Mountain View Care and Rehabilitation Center's Motion in Limine to Preclude Evidence of Alleged Utterances Made During a Collective Bargaining Agreement Negotiating Session in November of 2019. (Doc. 52.) In the Complaint, Plaintiffs Michelle Lopez, Nancy Acosta, Yanaira Marmol Pena, Yocasta Bello, and Ysmit Mercado allege that their employer, Defendant Mountain View Care and Rehabilitation Center, LLC, ("Defendant" "Mountain View") violated Title VII and the PHRA when it implemented a "blanket 'no Spanish' policy whereby employees could not speak Spanish anywhere on Defendant's premises at any time." (Doc. 1 ¶ 20; Doc. 40 ¶¶ 1, 2; Doc. 42 ¶¶ 1, 2.)  Plaintiffs specifically aver that the policy has a disparate impact on Plaintiffs, Defendant's only non-English speaking employees, and the policy creates a

hostile work environment for them. (*Id.* ¶¶ 40, 41.) They further aver that Defendant's policy has no business necessity. (*Id.* ¶ 42.) The policy is also referred to as the "English-only" policy. (*See, e.g.*, Doc. 50 ¶ 2.)

Defendant seeks to preclude the alleged utterances on the basis that they allegedly would not be offered for a proper purpose under Federal Rule of Evidence 404(b), the alleged utterances are too remote and not directly relevant to Plaintiffs' allegations, and they are too inconclusive and speculative. (Doc. 53 at 6-8.) For the reasons that follow, the Court will deny Defendant's Motion without prejudice.

## II. BACKGROUND

Defendant is a long-term skilled nursing care facility located in Scranton, Pennsylvania. (Doc. 1 ¶ 7; Doc. 40 ¶ 4; Doc. 42 ¶ 4.) Plaintiffs are or were employed by Defendant as certified nursing assistants ("CNA's") at Defendant's facility. (*Id.* ¶ 16.) They are all American citizens of Hispanic national origin who are bilingual in Spanish and English. (*Id.* ¶ 17; Doc. 40 ¶¶ 12, 13; Doc. 42 ¶¶ 12, 13.)

Plaintiffs specifically allege that they each attended a training session between July 16 and July 20, 2018, conducted by Defendant and the training included a new policy introduced with a power point presentation. (Doc. 1 ¶ 18.) Plaintiffs Acosta and Mercado attended a training session on July 17, 2018, Plaintiffs Lopez and Pena attended the training on July 18, 2018, and Plaintiff Bello attended the training of the afternoon of July 19, 2018. (*Id.* ¶¶ 22, 25, 33.) While Defendant contends that the slides presented at the July

17th and July 18th presentations referred to speaking Spanish in front of residents, Plaintiffs respond that Maria Fitzgerald, Defendant's Director of Education, explained that they could not speak Spanish in other areas of the facility or even on the outside grounds of the facility. (Doc. 40 ¶ 22; Doc. 42 ¶ 22.)  The policy has been referred to as both a "no Spanish" policy and a "no language other than English" or "English only" policy. (*See, e.g.,* Doc. 1 ¶¶ 22, 25, 31, 34, 37.)

Defendant denies that the policy was a "new policy," but Plaintiffs respond that employees had not previously been instructed that they could not speak Spanish in the facility's employee-only areas such as the break room, lunch room, smoking area and parking lot. (Docs. 40 ¶ 7; Doc. 42 ¶ 7.) Plaintiffs add that Fitzgerald testified at her deposition that there were no policies about employees speaking Spanish or English at Mountain View before 2018. (Doc. 42 ¶ 7 (citing Fitzgerald Dep. at 26-27).)

Plaintiffs Lopez and Acosta went to see Defendant's administrator, Michael Hetzel, on the morning of July 19, 2018, expressing that they felt uncomfortable and offended by the policy because it singled them out due to their Hispanic origin. (Doc. 1 § 29; Doc. 40 ¶ 26; Doc. 42 ¶ 26.) Plaintiff Lopez described the meeting between Hetzel, Plaintiff Acosta, and herself as follows:

> Nancy [Acosta] asked me to go with her to see Mr. Hetzel and speak to him about the situation because we felt targeted that it was – that the slide only said "Spanish."
>
> And we went to his office. . . . Nancy, she told him her concerns and stuff. And I didn't speak much till we got to the part where he was telling Nancy

3

> about . . . his grandfather that if we would have met him, you know, he would have told us about himself because this is America and, you know, we should be speaking English.
>
> And I told Mr. Hetzel, My husband does not speak or understand too much English, so if he calls me and Maria just said we're not supposed to even speak Spanish in the break room, what am I supposed to do?
>
> Mr. Hetzel said, Well -- this was his words and I won't forget it -- If I was eating a sandwich and, you know, I don't speak Spanish and you're speaking Spanish next to me, I can't even eat my sandwich in peace because I don't know if you're speaking about, you know, about me in Spanish. It's offensive to the other coworkers. So he said we shouldn't be speaking Spanish in the break room.
>
> And I said, So what am I supposed to do, go to the parking lot? And that's when he also specifically told me, There's family members that walk through that parking lot. Sometimes they take their family -- you know, the residents outside to sit out in the parking lot. They can't -- you know, you're not supposed to even speak Spanish around them because they're in the parking lot, so you will have to leave the premises to speak to your husband.

(Doc. 40 ¶ 27 (citing Def.'s Ex. 5, Lopez Dep. 21:2-22:10); Doc. 42 ¶ 27.) Hetzel denies this and other characterizations of his conversation but assumes for summary judgment purposes that the facts asserted are true. (Doc. 40 ¶ 72.)

Although Defendants contend that further training occurred after July 19, 2018, (Doc. 40 ¶ 22), Plaintiffs respond that "at no time after July 2018 were the employees advised that the policy was not as communicated by Fitzgerald and Hetzel, nor were they given further training regarding languages that could be spoken at the facility (Doc. 42 ¶ 28).

Each of the Plaintiffs asserts feeling offended, singled out, and discriminated against by the policy. (Doc. 1 ¶¶ 23, 26, 35; Doc. 40 ¶ 14.) Plaintiffs add that they were, in fact,

4

offended and provide citations to deposition testimony of record in support of the assertion. (Doc. 42 ¶ 14 (citations omitted).) Several Plaintiffs also allege that they have been subjected to comments by other employees and supervisors: Lopez experienced comments on three occasions (Doc. 40 ¶¶ 30-35, 37-38, 40); Marmol Pena described two incidents (*id.* ¶¶ 49-50); Mercado related one incident (*id.* ¶¶ 58-61); Acosta experienced comments on three occasions (*id.* ¶¶ 74-78); and Bello recollected a single comment (*id.* ¶¶ 85-86). In many instances, Plaintiffs disagree with Defendant's characterization of the comments made to Plaintiffs. (Doc. 42 ¶¶ 30-35. 37-38. 40, 49-50, 58-61, 74-78.)

In the Order addressing Non-party Louis J. Capozzi, Jr.'s Motion to Quash Subpoena to Testify at a Deposition in a Civil Action (Doc. 30) and Motion for Protective Order (Doc. 32) which were filed in response to the service of a subpoena to testify at a deposition served on Mr. Capozzi by Plaintiffs' counsel on August 21, 2020, the Court provided the following background information:

> During the course of collective bargaining negotiations [in November 2019] between the Defendant and the employees' certified bargaining representative, the Plaintiffs allege that the owner and Chief Executive Officer of the Defendant, Chaim "Mutty" Scheinbaum, used a racial slur against Hispanics, "spic", and that he did so in the presence of federal mediator Kathy Hall and the Defendant's chief negotiator, Louis Capozz, Jr. Plaintiffs attach the deposition of Danie Tarrow (Doc 34-1) in support of their claim that the word "spic" was uttered, although Tarrow testified that she could not tell if the word was spoken by Mr. Scheinbaum or Mr.Capozzi. (Dep. of Tarrow, Doc. 34 -1 at 24: 5-8). In addition, attached to the Memorandum of Law filed by Capozzi in support of his Motion for Protective Order, is a Confidential Witness Affidavit submitted in a National Labor Relations Board proceeding (Doc. 33-2) which purports to be the heavily redacted and unsigned affidavit of Rachel M. Eremo, wherein the following statements are attributed to Ms. Eremo in connection with

5

a collective bargaining session at which CEO Scheinbaum was present and as to which Ms. Eremo purportedly states: "I heard someone outside the [conference] room yell out 'spicks' or 'fucking spicks.' I cannot recall which."

(Doc. 46 at 2.)

### III. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). The Supreme Court has long recognized that "[a] reviewing court is handicapped in an effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 41 (1984). Thus, a district court's ruling on a motion in limine "is subject to change when the case unfolds." *Id.* While this is particularly so if the actual testimony at trial differs from what was anticipated in a party's motion in limine, but "even if nothing unexpected happens

6

at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

## IV. ANALYSIS

As set out above, the evidence Defendant now seeks to preclude relates to alleged utterances made in the course of November 2019 bargaining sessions. Defendant maintains the evidence should not be allowed pursuant to Federal Rule of Evidence 404, the incidents are too remote or too dissimilar from Plaintiffs' situation to be admissible under

7

Rule 404(b)(2), and the evidence must be excluded because it is too inconclusive and too speculative. (Doc. 53 at 6-8.)

In considering Non-party Louis J. Capozzi, Jr.'s Motion to Quash Subpoena to Testify at a Deposition in a Civil Action (Doc. 30) and Motion for Protective Order (Doc . 32), the Court found that information about the alleged utterances at issue here

> is relevant in that the making of racial or national origin slurs in the context of collective bargaining negotiations is directly relevant to the Plaintiffs' suit which alleges the discriminatory implementation of a policy prohibiting the speaking of Spanish by employees of Mountain View Care and Rehabilitation Center, LLC , not only in work areas and during working hours but also in non-work areas and during non-work time in violation of Title VII of the Civil Rights Act of 1964, as amended , 42 U.S.C. § 2000e , et seq.

(Doc. 46 at 3.)

Federal Rule of Evidence 404, "Character Evidence; Other Crimes, Wrongs or Acts," provides in pertinent part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Nevertheless, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (internal quotation marks omitted). "Because Rule 404(b) is a rule of general exclusion, the party seeking to to

admit other-acts evidence has the burden of demonstrating the evidence's applicability." *Id.* at 241 (brackets and internal quotation marks omitted).

Plaintiffs assert that "the testimony regarding the racial slur is probative of the discriminatory implementation of a policy prohibiting the speaking of Spanish by employees not only in work areas and during working hours but also in non-work areas and during non-work time." (Doc. 58 at 10.) This assertion shows that Plaintiffs are not necessarily seeking to introduce the testimony to show that "on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), but rather they may seek to introduce the evidence to show "motive, . . . intent, . . . plan, . . . absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2). Therefore, Defendant is incorrect that the testimony should be excluded because it will be offered for a proper purpose. (*See* Doc. 53 at 6.)

Defendant's second basis for precluding the testimony—that the November 2019 alleged utterances were too remote from the July 2018 policy implementation--is also without merit. Defendant's reliance on *Stair v. Lehigh Valley Carpenters Local Union No. 600 of the United Brotherhood of Carpenters and Joiners of America*, 813 F. Supp. 1116 (E.D. Pa. 1993), is misplaced because the case is readily distinguishable: in *Stair* the district court considered a four-year lapse of time between the prior claims of discrimination and the acts which were the subject of the litigation, *Stair*, 813 F. Supp. at 1118-20, and here less than a year and a half elapsed. Notably, although the matter was decided based on the lapse of time, *Stair* commented that the decision to exclude the evidence was not based on

the identity of the parties as it was relevant that two of the defendants were the same in each case. *Id.* at 1119-20. Here Plaintiffs attribute the alleged utterances at issue to Defendant's owner who was allegedly involved in the development of the English-only policy. (*See, e.g.*, Doc. 58 at 8.) Thus, given the far shorter period of time at issue here and the relevance of prior acts by the same actor(s) noted in *Stair*, 813 F. Supp. at 1119-20, and previously noted by this Court (*see* Doc. 46 at 3), Defendant's argument that the alleged utterances should be precluded because they are temporally too remote in time fails. Further, this determination is consistent with Third Circuit precedent allowing the introduction of temporally remote statements which go to building a circumstantial case. *Abrams v. Lightolier*, 50 F.3d 1204, 1214 (3d Cir. 1995) (citing *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d Cir. 1989)); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 733 (3d Cir. 1988)).

Defendant's final basis for precluding the testimony--that the testimony related to the alleged utterances must be excluded because it is inconclusive and speculative—is also unavailing. At this stage of the proceedings, the Court can only determine that Plaintiffs seek to present circumstantial evidence regarding utterances allegedly made by Defendant's owner, a subject which the Court has deemed relevant (*see* Doc. 46 at 3). As stated by Plaintiffs, "three independent non-party witnesses testified that the racial slur was spoken. . . . Strong circumstantial evidence from the same witnesses, and reasonable inferences made from that evidence, leads to the undeniable conclusion that it was

10

Scheinbaum who spoke the racial slur." (Doc. 58 at 9.) This is a case where, if the testimony is admitted at trial, Defendant can explore any perceived weaknesses in testimony regarding the alleged utterances on cross-examination. Therefore, the Motion is properly denied without prejudice.

## V. CONCLUSION

For the forgoing reasons, Defendant Mountain View Care and Rehabilitation Center's Motion in Limine to Preclude Evidence of Alleged Utterances Made During a Collective Bargaining Agreement Negotiating Session in November of 2019 (Doc. 52) will be denied without prejudice. A separate Order will enter.

Robert D. Mariani
United States District Judge